UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
AMERICAN BROADCASTING COMPANIES, :
INC., et al., :
 :
Movants, : Case No. 14-cv-09829-AJN
      v. :
AEREO, INC., :
 :
Respondent. :
_____X :

# BROADCASTERS' REPLY IN SUPPORT OF
# MOTION TO WITHDRAW REFERENCE OF THE STAY RELIEF
# MOTION AND SALE MOTION AND MEMORANDUM IN SUPPORT

This Court should withdraw the reference to resolve the Sale Motion and the Lift Stay Motion because both of these motions continue to present substantial copyright issues that only this Court can resolve.  Simply put, the principal goal of the bankruptcy process is to maximize recoveries for creditors, whereas the principal goal of the copyright laws is to protect copyright owners from infringement.  Where those two principles come into conflict, Congress intended that the limited authority of the bankruptcy court would give way so that the court of broader jurisdiction can decide what weight to give to these competing principles of federal law.  28 U.S.C. § 157(d).  Here, that is this Court.

Aereo itself admits that the purpose of its bankruptcy filing is to avoid the overhang of previous rulings by the Supreme Court and this Court, so that it can either sell its principal, single-purpose assets for maximum value to a third party, or continue to use them itself.  *See* Labovitz Decl., Dkt. 2, Ex. A (Bloomberg Trans. at 22) (Aereo's CEO admitting it is trying to "at least unencumber the assets, which are truly valuable.")  In particular, by filing for bankruptcy Aereo is hoping to avoid potential future rulings of this Court, including as to whether Aereo or a purchaser could engage in delayed retransmissions without infringing the

Broadcasters' copyrights.  This Court is in the best position to weigh Aereo's desire to maximize price with Broadcasters' concerns that a sale not be made to a buyer that will simply pick up where Aereo left off.

To blunt the Broadcasters' arguments, Aereo recently announced that it would not pursue a reorganization plan that allows it to continue to use its assets, suggesting that this Court should not be concerned with what other buyers might do with those assets.  But Aereo's own track record is one of shifting positions.  That means that, even at the last minute, Aereo could attempt to adopt a reorganization alternative such that Aereo's own activities would implicate Broadcasters' copyright rights.  That Aereo may not be, as it asserts, irrevocably committed to a sale of its assets is demonstrated by the following:

- Aereo has obtained the approval of the Bankruptcy Court to employ the services of lobbyists, presumably to continue to try to persuade the Federal Communications Commission ("FCC") that Aereo can qualify as a multi-channel video programming distributor ("MVPD") and, accordingly, continue in the business of retransmitting broadcast television signals, *see* Motion, Bankr. Dkt. 10, at ¶ 15 (order presented for approval at hearing on Dec. 19, 2014); and
- Aereo has continued to assert to the Bankruptcy Court that Section 111 of the Copyright Act allows Aereo to continue to stream broadcast television programming subject to a nominal compulsory license fee, *see* Motion, Bankr. Dkt. 6, at ¶ 9 (final order presented for approval at hearing on Dec. 19, 2014).

Thus, by withdrawing the Sale Motion now, the Court places itself in a position to review any proposed sale and decide if proposed uses by Aereo or a buyer, and the terms of the proposed order approving the sale transaction, will violate or sanction a violation of federal law.

Withdrawing the reference and deciding on the legality of Aereo's time-delayed retransmissions will provide guidance and additional clarity to any potential buyer (and to Aereo, should it decide to reorganize). This Court was poised to decide that issue.

Finally, also remaining in this case are the statutory damages to which the Broadcasters are entitled. Under prevailing copyright law, damages for Aereo's massive infringements would be determined by factors best known to this Court, and not the Bankruptcy Court. In short, the only appropriate sequence of events is a resolution of those still-live copyright issues by this Court first, on a fast track, and finalization of the bankruptcy second.

Withdrawing the reference of the Sale Motion will not prejudice Aereo. It simply means that an Article III court with appropriate authority can address the copyright issues the Sale Motion presents. If, as Aereo posits, a buyer is found who can make a lawful use of the assets, the worst that happens from Aereo's perspective is that this Court, not the Bankruptcy Court, approves the sale. By contrast, making Broadcasters wait for such relief creates the very real possibility that, on March 11, Aereo will claim that approving its sale is an emergency that cannot wait while this Court considers whether to withdraw the reference.

Unless Aereo is prepared to stipulate today that the entirety of its conduct – both its simultaneous and delayed transmissions – are infringing, the record Aereo itself continues to create requires this Court to decide the copyright issues. Aereo has itself insisted that it needs to know the extent of its liabilities on an expedited basis, potentially before the date of the auction. *See* Ex. A, 12/19/2014 Bankruptcy Court Transcript at 116 (hereinafter, "Tr."). That is a concession that a prompt resolution of the copyright issues is necessary.

**ARGUMENT**

**I.      The Sale Motion Is Subject To Mandatory Withdrawal Of The Reference.**

Aereo's Sale Motion is subject to mandatory withdrawal because it requires consideration of both the Copyright Act and the Bankruptcy Code. Aereo argues that insofar as it has ceased using the assets for copyright infringing activities, Broadcasters are only seeking "hoped-for advisory opinions addressing hypothetical conduct by hypothetical buyers of the Debtor's assets." (Obj. at 12.) That misstates the issue. Broadcasters are not seeking an opinion that is advisory against a possible buyer. They are pursuing permanent injunctive relief against Aereo establishing that both of Aereo's simultaneous and delayed retransmissions infringe their copyrights. That issue remains alive in this case because it "is well settled that voluntary cessation of activity does not preclude injunctive relief." *Commodity Futures Trading Comm'n v. Cheung*, No. 93 CIV. 5598 (RPP), 1994 WL 583169, at *3 (S.D.N.Y. Oct. 21, 1994); *see County of Los Angeles et al. v. Davis et al.*, 440 U.S. 625, 631 (1979) ("We recognize that, as a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot.'" (quoting *United States v. W. T. Grant Co.,* 345 U.S. 629, 632 (1953))).[1]

Aereo now argues that mandatory withdrawal is not required because (1) it has shut the door on the possibility of a reorganization, (2) a section 363 sale is a core bankruptcy matter, and (3) the bankruptcy court will "not need to actually resolve issues under the Copyright Act merely

---

[1] *Accord Allee v. Medrano*, 416 U.S. 802, 810 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to their old ways." (internal quotation marks and alterations omitted)); *New York State NOW v. Terry,* 159 F.3d 86, 91 (2d Cir. 1998) (burden to demonstrate mootness due to voluntary cessation of misconduct "is a heavy one" and is not satisfied without demonstrating that it is "absolutely clear" that the conduct the plaintiff alleges is infringing will not recur).

to determine that a Debtor's assets can be sold." (Obj. at 2-3, 13-14, 17-19.)  Only the second of those points has any validity.  The first is not true because Aereo, notwithstanding what it *says* for purposes of opposing this motion, continues to act as if it is keeping the possibility of a reorganization alive.

The third of those points is not accurate because the Sale Motion, which requires "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes," *see City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991), is subject to mandatory withdrawal.  Here, *Audiofidelity Enterprises, Inc. v. Conrad Music (In re Audiofidelity Enterprises, Inc.)*, 103 B.R. 544 (Bankr. D.N.J. 1989), is instructive insofar as it stands for the proposition that copyright issues should be addressed before a bankruptcy court rules.  *Audiofidelity* involved a debtor's proposed 363 sale of assets that had been previously found to be infringing in a longstanding copyright dispute prior to the bankruptcy.  *Id.* at 546.  The *Audiofidelity* bankruptcy court had to rely on the district court's determination of copyright issues before it could "balance the rights of the copyright holders under title 17 of the United States Code versus the rights of the debtors and creditors that come before [it] under title 11 of the United States Code."  *Id.* at 547.  Only because the district court had already decided the copyright and issued a permanent injunction that the bankruptcy court could proceed.  *Id.* at 548.  By contrast, Aereo filed for bankruptcy rather than proceeding with the summary judgment briefing schedule to which it agreed and before this Court could consider entry of a permanent injunction against Aereo that would have included both the live and time delayed retransmissions.

Aereo argues that any sale will not, in itself, "authoriz[e] any person or entity, including the Debtor or any potential successful bidder for its assets, to take any action that violates United

5

States copyright law or any other applicable law." (Obj. at 6.)  It further asserts that there are a "myriad of ways" the assets can be used that do not "bear on or concern any issue" in the case before this Court.  (Obj. at 8-9.)   At the same time, Aereo states, however, "How such buyer intends to use the Debtor's assets is not the Debtor's concern, and the Debtor would not expect any potential buyer to share its business plans and strategies in any event." (Obj. at 7.)  But, Aereo has not yet shared its marketing materials describing the technology and uses – even though the bankruptcy court has ordered it to do so.  That documentation will shed light on how Aereo is promoting the technology to potential buyers.  *See* Tr. at p. 130.   It is incredulous for Aereo to argue that buyers will not be seeking to use the assets in a manner that may violate Broadcasters copyrights because Aereo itself has stated that its technology was intentionally designed "very specifically to broadcast TV." *See* Labovitz Decl., Dkt. 2, Ex. A (Bloomberg Trans. at 31).

Further, Aereo continues to draw a veil over its intentions by refusing to submit, in advance, the text of the sale order.  The language of that order will bear directly on the uses that a buyer can make of the assets.

Finally, Aereo could go a long ways toward addressing these issues by agreeing to a permanent injunction that would (1) prohibit all retransmissions, whether live or delayed, and (2) require a purchaser of its assets to be bound by that injunction.  That would demonstrate that Aereo has completely abandoned all efforts to preserve any right to use its assets in a copyright infringing manner or enable a purchaser to do so.  Its refusal to agree to such an injunction keeps the copyright issues alive.

As for Aereo's argument that its Sale Motion is really just a motion to establish procedures and "does not request authority to actually sell any of its assets," (Obj. at 6), that

6

simply is not correct. At the hearing regarding such procedures on December 19, 2014, Judge Lane acknowledged that substantive copyright issues are implicated by the sale. (*See* Tr. at 163-64.)

**II.     The Sale Motion And The Stay Relief Motion Should Be Withdrawn For Cause.**

The infringement issues that have been part of this case for nearly three years are inextricably intertwined with the sale process and claims allowance process before the bankruptcy court. Accordingly, the Stay Relief Motion should be withdrawn along with the Sale Motion so that this Court can efficiently determine: (1) the scope of a permanent injunction against Aereo for both live and time-delayed retransmissions and (2) whether any sale order is consistent with the terms of such a permanent injunction.

Aereo argues that "[i]f the sale process were to be delayed by any material period of time," or "[i]f the Debtor is forced to continue to litigate the broadcaster claims at this time, it will fast deplete its cash." (Obj. at 8.) If Aereo were interested in an expedited resolution, it easily could agree to the permanent injunction in the form described above and to procedures that would allow this Court, which is familiar with the fully-developed record and legal issues, to resolve this case quickly. For whatever reason, as recently as five weeks ago, it opposed such a resolution. *See* 12-cv-1540, Dkt. 351 (Nov. 12, 2014 Joint Letter in which Broadcasters requested summary judgment motion deadline of December 15, 2014 and Aereo requested deadline of March 18, 2015). As Aereo attempts to sell its assets, it is much more efficient and orderly to determine the copyright issues first, which bear directly on what uses may be made of those assets.

*In re Cinnabar 2000 Haircutters, Inc.*, 20 B.R. 575 (Bankr. S.D.N.Y. 1982), is instructive. In *Cinnabar*, the bankruptcy court granted a creditor's motion for relief from the

automatic stay to allow the creditor to enforce its injunction against the debtor in the district court, an injunction granted one month prior to the debtor's bankruptcy. *Id.* at 576-77.  As is the case here, the debtor in *Cinnabar* argued that allowing the case to proceed in the district court would impair its ability to effectively reorganize in the bankruptcy court. *Id.* at 576.  The court found that, "[i]n weighing the rights of the parties, the scales tip[ped] heavily in favor of the plaintiff, who ha[d] obtained a judicial determination that it has a valuable property right in its tradename 'Cinnabar' that is violated and damaged by the debtor's use of the same name in connection with its business." *Id.* at 576-77.  The court noted that the legislative history of section 362 indicated that Congress did not intend for bankruptcy to be "a haven for criminal offenders," and similarly "should not be a haven for contumacious conduct . . . behind the shield of the automatic stay." *Id.* at 577 (quotation omitted).[2]

By modifying the stay now, and allowing the briefing to proceed on this Court's current schedule (or a modified, expedited schedule if Aereo prefers), the Court will ensure that the Broadcasters' rights are protected while allowing Aereo's bankruptcy case to move expeditiously.  *See id.*  The cases cited by Aereo in its Objection do not warrant a different result.

*In re Spansion, Inc.,* 418 B.R. 84 (Bankr. D. Del. 2009), on which Aereo heavily relies, is not applicable.  Obj. at 12.  In *Spansion,* the parties had already agreed to modify the automatic stay to allow the movant to continue to pursue claims against the debtor in district court. *Id.* at 89.  The *Spansion* court ruled that later, separate actions initiated by the movant in two other courts (the International Trade Commission and a German court) could not proceed. *Id.*  The court held that the debtor should not have to litigate similar infringement actions in multiple

---

[2] *Cinnabar* was distinguished in *Sonnax,* but on grounds that are inapposite here: while only a preliminary injunction had been entered, there was no indication that the state court was close to entering a permanent injunction, indeed, discovery had not even begun.  *Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1287 (2d Cir. 1990).

locations where the claims were already being heard "in the District Court Action, as was originally contemplated and approved by this Court." *Id.* at 97.[3]

In *Spansion,* the parties recognized that the district court, where the infringement action had been pending for some time, was in the best position to efficiently decide the relative rights of the parties. The same result is compelled here. *See also Hohol v. Essex Indus., Inc. (In re Hohol)*, 141 B.R. 293, 298-99 (M.D. Pa. 1992) (relief from stay warranted to allow movant to enforce injunction in state court where "[i]n light of the extensive proceedings already undertaken in the [state court] and [debtor]'s failure to point to any reason why that [c]ourt cannot render a competent decision, the [state court] would 'more economically, conveniently, and quickly' resolve the present dispute," and because the automatic stay should not be used as a tool to "relieve [the debtor] of the consequences of an injudicious business deal"); *In re Consol. Distribs., Inc.*, Case No. 13-40350 (NHL), 2013 WL 3929851 (Bankr. E.D.N.Y. July 23, 2013) (lifting the automatic stay where infringement litigation had proceeded to an advanced stage despite debtor's argument that being forced to continue litigation in district court would inhibit its ability to administer its bankruptcy case).

---

[3] In addition, Aereo fails to note that the order entered in *Spansion* was vacated by *Samsung Electronics Co. v. Ad Hoc Consortium of Floating Rate Noteholders,* 2010 WL 2636115 (D. Del. June 29, 2010).

## CONCLUSION

For the foregoing reasons, this Court should overrule Aereo's objection and withdraw the reference of the Stay Relief Motion and Sale Motion pursuant to 28 U.S.C. § 157(d), and such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Patrick J. Trostle*
Patrick J. Trostle
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699

Catherine L. Steege (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60613
Tel: (312) 222-9350
Fax: (312) 527-0484

Richard L. Stone (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
Amy M. Gallegos (*pro hac vice*)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

*Counsel for WNET; THIRTEEN; Fox Television Stations, Inc.; Twentieth Century Fox Film Corporation; WPIX, LLC; Univision Television Group, Inc.; The Univision Network Limited Partnership; Public Broadcasting Service; KSTU, LLC; Fox Broadcasting Company, and KUTV Licensee, LLC*

Dated: December 23, 2014
New York, New York

/s/ *M. Natasha Labovitz*
Bruce P. Keller
M. Natasha Labovitz
Michael Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836

*Counsel for American Broadcasting Companies, Inc.; Disney Enterprises, Inc.; CBS Broadcasting Inc.; CBS Studios Inc.*

/s/ *Michael V. Blumenthal*
Michael V. Blumenthal
Jennifer A. Christian
THOMPSON & KNIGHT LLP
900 Third Avenue
20th Floor
New York, NY 10022-4728
Tel: (212) 751-3001
Fax: (212) 751-3113

*Counsel for NBCUniversal Media, LLC; NBC Studios, LLC; Universal Network Television, LLC; Telemundo Network Group LLC; and WNJU-TV Broadcasting LLC*